## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| C.P. individually and on behalf of I.P., a minor,<br><br>               Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, and the CALIBER HOME LOANS INC. WELFARE BENEFITS PLAN,<br><br>               Defendants. | **MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:21-cv-378-BSJ<br><br>Hon. Bruce S. Jenkins |

On March 23, 2023, the Court held a hearing to determine the status of previously remanded claims and to also discuss the parties' dueling summary judgment motions, which were then under advisement. The pending summary judgment motions concerned the denial of medical benefits coverage for the treatment of Plaintiff's son at the Maple Lake Academy for Boys ("Maple Lake"). Brian S. King appeared for Plaintiff C.P.; Emily Kile-Maxwell appeared for Defendants United Healthcare Insurance Company and United Behavioral Health (collectively "United"), and Defendant Caliber Home Loans Inc. Welfare Benefits Plan.

At the March 23 hearing the Court raised the issue of whether Maple Lake was a "licensed" residential treatment center and the impact that Maple Lake's status as a licensee may have had on United's denial of the claims. The Court also

- 1 -

inquired as to whether Maple Lake's provision of educational services to its school-aged residents could convert Maple Lake from a residential treatment center into some other potentially non-covered facility, such as a therapeutic boarding school. The Court directed the Plaintiff to file a supplemental brief on whether Maple Lake was a residential treatment center and on the provision of educational services at residential treatment facilities and directed Defendants to respond. The Court held a hearing on June 13, 2023, to discuss this additional briefing.

The Court having reviewed the summary judgment briefs submitted by the parties, the supplemental briefs submitted by the parties, the supplemental authority cited by parties, the administrative record filed in this action, and the relevant law, and having heard oral argument from counsel, and for reasons discussed more fully below, hereby GRANTS IN PART Plaintiff's motion for summary judgment, and DENIES Defendants' motion for summary judgment. In summary, the Court concludes that, on this record, United's denial of residential treatment center benefits was not reasonable under the arbitrary and capricious standard of review. The Court further concludes that, although United's stated basis for denying coverage for treatment at Maple Lake was erroneous (that is, Maple Lake was a licensed residential treatment center), thus rendering its denials arbitrary and capricious, remand rather than an award of coverage is warranted. Relatedly, Plaintiff's claim that United and the Plan violated the Mental Health

Parity and Addiction Equity Act (the "Parity Act") is mooted by such remand.[1]   *See,*
*e.g., Theo M. v. Beacon Health Options*, No. 2:19-cv-00364, 2022 WL 4484517, at *17
(D. Utah Sept. 27, 2022) (recognizing that if a remand is ordered "disputes under
the Parity Act are simply not ripe for decision").

## BACKGROUND

This action concerns a dispute under ERISA as it relates to the mental health
care that Plaintiff's son, I.P., received at Maple Lake Academy for Boys ("Maple
Lake"), a residential treatment center.   Essentially, the issue is whether the care
I.P., a beneficiary under the applicable medical benefit plan available to Plaintiff,
received at Maple Lake is a covered benefit under that plan or whether, consistent
with ERISA, United's denial of coverage was reasonable.

During the period when I.P. was receiving care at Maple Lake, Plaintiff was a
member/participant in the Caliber Home Loans, Inc. Choice Plus PPO (the "Plan"),
which was insured by Defendant UnitedHealthcare Insurance Company and
administered by Defendant United Behavioral Health.   (*See* ECF No. 2, ¶2.)   I.P.
was an enrolled dependent and a beneficiary under the Plan.   (*See id.* ¶3.)   Plaintiff
sought coverage for I.P.'s care at Maple Lake under the Plan for the period from
June 25, 2018, to January 1, 2020.   (*See id.* ¶ 4.)

The Plan purports to provide some benefits for the diagnosis and treatment of
mental illnesses, including inpatient benefits at the residential treatment center
level of care.   (*See* Choice Plus PPO Summary Plan Description at A.R. 00053,

---

[1]   Defendants' motion to strike (ECF No. 95) is also denied as moot.  The Court has not considered the Affidavit of Mary Covington that was the subject of the motion in connection with its decision.

00139-40; *id.* at A.R. 00054 (indicating that "Residential Treatment" coverage is also available for "Autism Spectrum Disorder Services").)  Whether such coverage is available depends on the definitions specific to the Plan and a determination, under the specific terms of the Plan, that the care was "medically necessary." (*See, e.g.,* A.R. 00009 (providing that, under the Plan healthcare service "is only a Covered Health Service if it is Medically Necessary") & A.R. 00131.)

Upon being admitted to Maple Lake, I.P., then 13 years old, was diagnosed with Autism Spectrum Disorder, level 1; Attention-Deficit/Hyperactivity Disorder; Parent-child relational problem; and Mood Dysregulation subsequent to ASD— diagnoses that have been consistent since he was age 7. (*See* A.R. 00731-32.)

In its initial denial letter dated February 11, 2019, United denied Plaintiff's claims for I.P.'s treatment by noting that "Maple Lake Academy for Boys, LLC is not eligible for coverage under the Optum benefit for Mental Health Residential Level of Care.  It does not meet the Optum clinical criteria for that Level of Care." (*See* A.R. 5982-83.)  The denial did not include any assessment of medical necessity and there was no discussion of I.P.'s actual treatment records.

In its second denial, dated September 9, 2019, United stated that it was denying Plaintiff's claims because: "the appealed service does not meet the Level of Care Guidance required to be followed in the member's behavioral health plan benefits," and that the care "does not meet the Optum clinical criteria for the residential level of care." (A.R. 10433-34.)  This second denial also did not address I.P.'s treatment records or diagnoses, or the recommendation from one of I.P.'s

treatment providers that I.P. "should be in residential treatment." (*See* A.R. 10917-18.) Unlike the first denial, this letter from United did mention "medical necessity," but only to state, without reference to any specific records, that "there was insufficient clinical data to support medical necessity for residential care." (*See id.* at 10434.)

In its third denial (characterized as an "urgent appeal" denial) dated September 16, 2019, United again informed Plaintiff that it was denying his claim because "Maple Lake Academy For Boys, LLC is not eligible for coverage .... It does not meet the Optum clinical criteria for that level of care." (*See* A.R. 10455-56.) This third denial did not include any medical necessity assessment, it did not address I.P.'s treatment records or his diagnoses, and it did not discuss the residential treatment recommendation from I.P.'s treatment provider.

Finally, in a fourth, so-called "Corrected" urgent appeal denial, dated April 1, 2020, United informed Plaintiff that coverage was not available because Maple Lake was not a residential treatment center: "The Facility's website indicates they are accredited as a Therapeutic Boarding School with no references to MH [Mental Health] RTC [Residential Treatment Center] level of accreditation.  Your child appeared to be in a Therapeutic Boarding School ...." (*See* A.R. 10466-67.)  This letter did include some discussion of I.P.'s treatment experiences but without any specific references to the medical record.[2] (*See id.*)  Consistent with all the other

---

[2]     During the June 13, 2023, hearing, counsel for United was asked to identify where in its many denials was there a specific discussion or reference to I.P.'s medical treatments at Maple Lake. Counsel could only cite to this denial letter, which does not specifically cite to any medical records or treatments I.P. was receiving at Maple Lake.

denials, this letter did not engage with the recommendation that I.P. should be in residential treatment.

## DISCUSSION

Before the Court engages in any analysis of the denial of benefits to an ERISA plan participant, it must determine the standard of review to be applied. In ERISA actions, there are two: a *de novo* standard, which is the default standard to be applied, or the arbitrary and capricious standard,[3] which is to be applied if the plan at issue confers upon the plan administrator the discretionary authority to determine benefit eligibility. *See Foster v. PPG Indus.*, 693 F.3d 1226, 1231 (10th Cir. 2012); *see also Mark M. v. United Behavioral Health*, No. 2:18-cv-18, 2020 WL 5259345, at *7 (D. Utah Sept. 30, 2020) (citing cases).

Often the determination as to which standard of review shall apply may be consequential, particularly when examining whether the treatment was medically necessary. But not so in this case. This is so because United's reviewers never engaged in any meaningful medical necessity review of I.P.'s treatment at Maple Lake. Rather, each of United's denials was based on the premise that Maple Lake was not a licensed residential treatment center, but a boarding school that was not covered under the Plan. The examination then is whether Maple Lake was a licensed residential treatment center, the answer to which does not depend on what

---

[3]     An "[a]rbitrary and capricious review of the reasonableness of a benefits decision considers if it (1) was the result of a reasoned and principled process, (2) is consistent with any prior interpretations by the plan administrator, (3) is reasonable in light of any external standards, and (4) is consistent with the purposes of the plan." *D. K. v. United Behavioral Health*, 67 F.4th 1224, 1236 (10th Cir. 2023) (quotation omitted).

standard of review may be used—either Maple Lake was licensed, or it was not. Under either standard, the answer will be the same.[4]

As referenced above, United repeatedly denied Plaintiff's claims on the ground that Maple Lake was not a residential treatment center and was not licensed.[5] Indeed, on this record there can be little doubt that United came early (or perhaps pre-disposed) to the view that Maple Lake was not a residential treatment center and, in turn, denied the claims on that basis as an excluded service.

From the start, Plaintiff offered United proof that Maple Lake was, in fact, licensed as a residential treatment facility in Utah.  Plaintiff provided copies of Maple Lake's State of Utah licensing certificate, copies of the Utah Administrative Code relating to such licensing and setting forth the requirements to receive a license, and federal data indicating that Maple Lake was classified as a "psychiatric residential treatment facility."[6]  (See A.R. 10686-10702, 10706-08); see also James C.

---

[4]    Plaintiff has argued for a *de novo* review of medical necessity.  Because the Court has determined that United did not meaningfully engage in any medical necessity review, there is no need to reach Plaintiff's argument.  Following remand, Plaintiff may renew these arguments if still applicable.

[5]    (*See* Denial letter dated February 11, 2019 (A.R. 5982-83); Denial letter dated September 9, 2019 (A.R. 10433-34); Denial letter dated September 16, 2019 (A.R. 10455-56); Denial letter dated April 1, 2020 (A.R. 10466-67).)

[6]    The federal NPI website, which is run by the U.S. Department of Health and Human Services, identifies Maple Lake Academy as a provider, it gives the date when the number was created (in this case February 3, 2017), and further identifies the "Primary Taxonomy" of Maple Lake as "Residential Treatment Facilities," with a State of Utah license.  The administrative record in this case reveals that United had a record of Maple Lake's NPI registration number (1568900116) since, at least, November 20, 2019, which was almost three months before United sent it first denial letter to Plaintiff.  (*See* A.R. 04970.)  Maple Lake's NPI profile further states that:

> "[a] residential treatment facility (RTF) is a facility or distinct part of a facility that provides to children and adolescents, a total, twenty-four hour, therapeutically planned group living and learning situation where distinct and individualized psychotherapeutic interventions can take place. Residential treatment is a specific level of care to be differentiated from acute, intermediate, and long-term hospital care, when the least restrictive environment is maintained to allow for normalization of the patient's surroundings. The RTF must be both

*v. Anthem Blue Cross and Blue Shield*, No. 2:19-CV-38, 2021 WL 2532905, at *2 (D. Utah June 21, 2021) (noting that it was undisputed that at "all relevant times, Maple Lake was a licensed Residential Treatment Center").

Ignoring this unrebutted showing, on September 16, 2019, United denied Plaintiff's claims on the basis that Maple Lake was not a residential treatment center.  United used identical language from its initial February 11, 2019, denial letter, repeating that it was denying the claims because "Maple Lake Academy For Boys, LLC is not eligible for coverage under Optum benefit for Mental Health Residential level of care.  It does not meet the Optum clinical criteria for that level of care." (*See* A.R. 10455-56.)  Plaintiff then sought a "level two" appeal, and again included proof that Maple Lake was a licensed residential treatment center.  But once again, United denied the claims because, among other reasons, "the facility's [Maple Lake] website indicates they are accredited as a Therapeutic Boarding School with no reference to a MH RTC level of accreditation.  Your child appeared to be in a Therapeutic Boarding School where he received some behavioral health service." (A.R. 10466-67.)  The level-two review goes on to state that the "school did

---

physically and programmatically distinct if it is a part or subunit of a larger treatment program. An RTF is organized and professionally staffed to provide residential treatment of mental disorders to children and adolescents who have sufficient intellectual potential to respond to active treatment (that is, for whom it can reasonably be assumed that treatment of the mental disorder will result in an improved ability to function outside the RTF) for whom outpatient treatment, partial hospitalization or protected and structured environment is medically or psychologically necessary."

*See* https://npiprofile.com/npi/1568900116, as accessed March 22, 2023.  Thus, United could have simply reviewed its own records, which would have, at minimum, called into doubt its view that Maple Lake was not a residential treatment center.

not appear to provide the scope or intensity of services that would meet the definition of a clinical residential treatment center ....["7] (*See* A.R. 10467.)

And finally, Plaintiff sought an "independent" external review of United's denials. Plaintiff again expressly informed the external reviewer that Maple Lake was a licensed residential treatment center and provided proof of the same. (*See* A.R. 10500-02.) Yet again, on April 24, 2020, the external reviewer upheld the prior denials relying, in part, on the same suspect rationale. The external reviewer credited the erroneous determination that "the facility is not licensed as a residential facility per the State of Utah," and that the facility is identified on its website as "certified as a therapeutic boarding school ...." (*See* A.R. 13701-02.) Moreover, in affirming denial, the reviewer stated that "this facility is not a covered benefit under the patient's plan." (*See* A.R. 13702.) While the external reviewer did go on to discuss reasons why he did not believe Maple Lake was a residential treatment center, he continued to cite his (and United's) view that Maple Lake was only providing "therapeutic boarding school services." (*See* A.R. 13702.)[8]

United's continued reliance on the erroneous unlicensed status of Maple Lake calls into question the veracity of its many denials. It is difficult, if not impossible, for the Court to discern how much that inaccurate and objectively false

---

[7]     Note that the Plan at issue contains no definition of a "MH RTC level of accreditation" or a "clinical" residential treatment center, but only a definition of "Residential Treatment" facility, to which Plaintiff offered evidence that Maple Lake met.

[8]     The opinion of the external reviewer is really of no import as United's denials must stand on their own. *See David P. v. United Healthcare Ins. Co.*, 564 F. Supp. 3d 1100, 1122 (D. Utah 2021); *Theo M. v. Beacon Health Options*, 2022 WL 4484517, at *14. "Rationales and factual evidence later cited by external reviewers cannot salvage deficient rationales or findings of fact provided by [United]." *David P.*, 564 F. Supp. 3d at 1122.

determination may have impacted United's continued denials of Plaintiff's claims. While it may be that Maple Lake's services, as provided to Plaintiff's son, did not rise to the level of services that are covered under the Plan, it is impossible to determine whether United's review was improperly tainted by its erroneous view that Maple Lake was not licensed as a residential treatment center and was only a therapeutic boarding school.

Perhaps cognizant of this issue, United, in its supplemental briefing and at the June 13 hearing, argued that, regardless of Maple Lake's licensed status, it denied Plaintiff's claims because Maple Lake was not offering residential treatment services as defined under the Plan because it was "providing primarily excluded Educational Services." (*See* ECF No. 94, at 7-9.) But this determination was not communicated to Plaintiff in any meaningful manner in any of United's denial letters.

When asked at the June 13 hearing to identify what denial letter informed the Plaintiff of United's determination, counsel suggested it was United's last denial letter (A.R. 10466) that did so. Counsel specifically identified the following sentence, "The therapeutic boarding school did not appear to provide the scope or intensity of services that would meet the definition of a clinical residential center ....," as identifying that ground for its denial. Without addressing Plaintiff's well-taken argument that by raising this issue in its very last denial letter United did not provide Plaintiff with any opportunity to respond, there is nothing in this language that specifically references what treatments I.P. was receiving at Maple

Lake and how they did or did not comport with the Plan's definition of residential treatment services.  There is a complete absence of any discussion as to exactly what services I.P. received and why those services were not "residential treatment" services under the Plan.

Equally puzzling is United's suggestion, raised for the first time in its supplemental briefing and at the June 13 hearing, that this very same language, can only be read to understand that United was denying the claim because it fell within the Plan's Educational Services exclusion.[9]  It is unclear to the Court how the same statement, which neither mentions educational services nor describes the services that I.P. was receiving at Maple Lake, can "only be read" to understand that United was denying Plaintiff's claim for two reasons: (1) I.P. was receiving services that were primarily educational in nature; and (2) because Maple Lake was providing primarily educational services it did not meet the Plan's definition of a residential treatment center.  In the Court's view, the words of the cited sentence do not clearly and "only" express these rationales.  This view is buttressed by the fact that United, in both its opening brief in support of its motion for summary judgment (ECF No. 61) and in its reply brief (ECF No. 81), never advanced this

---

[9]       This argument calls to mind the famous colloquy in Lewis Carroll's "Through the Looking-Glass":

>       "When I use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."
>
>       "The question is," said Alice, "whether you can make words mean so many different things."
>
>       "The question is," said Humpty Dumpty, "which is to be master—that's all."

L. Carroll, THROUGH THE LOOKING-GLASS, AND WHAT ALICE FOUND THERE 124 (Macmillan and Co. 1882).

"reading" or argued that this denial letter was based on Maple's Lake's purported provision of educational services.

The Court finds this especially troubling.  United, which under ERISA has fiduciary obligations to the Plaintiff, appears to have repeatedly ignored Plaintiff's arguments and evidence as to I.P.'s treatments and Maple Lake's status, and failed to fully communicate the bases for its denials to Plaintiff.  For example, there is no indication in its first three denial letters what evidence United considered in making its determination to reject Plaintiff's evidentiary proffers concerning Maple Lake.[10]  United not only had an obligation to provide such information and engage in a reasonable investigation in conducting a full and fair review of the Plaintiff's claim, but it also had the burden of demonstrating the evidence to deny and exclude the claim.  *Cf. Lemon v. E.A. Miller, Inc.*, No. 1:04-cv-107, 2005 WL 925656, at *8-*9 (D. Utah Apr. 18, 2005) (reversing denial of claim where defendant failed to engage in investigation that would have revealed that defendant's basis for denial was not accurate); *see also D.K. v. United. Behavioral Health*, 67 F.4th 1224, 1237 (10th Cir. 2023) (concluding that, under ERISA, a plan administrator "cannot shut [its] eyes to readily available information" that could confirm a beneficiary's entitlement to benefits, and, if it does so, it has acted "arbitrarily and capriciously.") (cleaned up); *David P. v. United Healthcare Ins. Co.*, 564 F. Supp.3d 1100, 1117-20 (D. Utah 2021) (concluding United's reviewers violated ERISA where they did not engage with the

---

[10]     In their Answer to the Complaint, the Defendants admit that they did not understand why United's reviewer "relied on website research instead of consulting the copy of Maple Lake's residential treatment licensure included with the appeal." (ECF No. 14, at ¶ 49 n.2.)  Tellingly, they also admit that if United's reviewers had done so "they would've seen that the State of Utah licensed Maple Lake to provide residential treatment care ...." (*Id.*)

material submitted by plaintiff and provided cursory statements without any indication how they reached their conclusions), *appeal filed*, No. 21-429 (10th Cir. Oct. 29, 2021).

Indeed, in *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 808 (10th Cir. 2004), the Tenth Circuit acknowledged that, "[a]n ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter." While the court acknowledged that an ERISA fiduciary "has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own." *Id.*

There is no evidence in the over 11,000-page administrative record filed in this action demonstrating that United engaged in any investigation (much less a thorough investigation) to determine whether Maple Lake satisfied the Plan's definition of a residential treatment center so that I.P.'s treatment there might be covered. The only hint of any investigation was in United's September 16, 2019, denial letter, in which United's reviewer, Dr. Michael Soto, notes that "this review typically involves a telephone conversation with your child's medical provider. However, [United's] attempts to reach your child's provider by phone were unsuccessful." (*See* A.R. 010455.) A deeper examination into the record reveals that even this representation stretches the truth. Dr. Soto claimed that he called Maple Lake at 10:00 am on Friday, September 6, 2019, and left a voicemail setting a deadline for a return call just 15 minutes later. (*See* A.R. 000373.) At 10:15 am,

after he had not received a call back, Dr. Soto notes that he called Maple Lake again and was again put into voicemail.  He left no message this time.  Instead, his notes reflect that he resumed his review without hearing back from Maple Lake and without further investigation as to Maple Lake's status.  Tellingly, his internal notes reveal that he relied on the erroneous fact that, "the facility [Maple Lake] is not licensed as a residential facility."  (*See* A.R. 000373.)  And in his September 16, 2019, denial letter, Dr. Soto relied on his false factual assumption when he informed the Plaintiff that coverage is not available because "Maple Lake Academy For Boys, LLC is not eligible for coverage under the Optum benefit for Mental Health Residential level of care.  It does not meet the Optum clinical criteria for that level of care." (*See* A.R. 10455-56.)

Here United denied Plaintiff's claims based on its erroneous view that Maple Lake was not a licensed residential treatment center.  That United initially denied the claims without conducting any real investigation as to Maple Lake's status is problematic.  That it continued to deny the claims without conducting any investigation as to Maple Lake's status **after** Plaintiff's evidentiary proffers and without responding directly to Plaintiff's proffers is fatal.[11]  United's failure to do so establishes that it did not provide Plaintiff with a full and fair review of his claims.  Accordingly, based on the unchallenged administrative record in this case, United's actions were arbitrary and capricious.  *See, e.g., D.K. v. United Behav. Health,* 67

---

[11]     United has not pointed to any part of the record to establish the investigation it undertook to determine whether Maple Lake was a residential treatment center, other than its purported review of Maple Lake's website, which it admits was error.  (*See* ECF No. 14 ¶ 49 n.2.)

F.4th at 1237 (plan administrator acts "arbitrarily and capriciously" if it shuts its eyes to readily available information that would confirm benefits).

Although United's denials unquestionably rely on Maple Lake's unlicensed status, because at least one of the denials (the last one) also touched upon medical necessity, the appropriate remedy appears to be remand. That is so because there remains at least some doubt as to whether the administrative record establishes that United's decisions to deny benefits were wholly unreasonable. *See Theo M. v. Beacon Health Options*, 2022 WL 4484517, at *18. Accordingly, the Court finds that remand, rather than an award of benefits, is the appropriate relief.

Upon remand, however, United must reconsider its denial consistent with this Decision and Order. United may not make any assertion that Maple Lake is an unlicensed or inappropriate residential treatment center under the law and the Plan. By its repeated refusal to engage with Plaintiff's evidence and the undisputed truth as to Maple Lake's licensed status, United has forfeited that ground. Rather, United may only rely on grounds unconnected to Maple's Lake's status as a residential treatment center that it previously asserted in its denials. Further, United may not introduce any rationales for denying coverage that it failed to articulate in its prior letters denying benefits for I.P.'s treatment and care. This limitation protects against United taking an inappropriate second bite at the apple and sandbagging Plaintiff "by after-the-fact plan interpretations devised for purposes of litigation." *See D.K. v. United Behav. Health*, 67 F.4th at 1241 (cleaned up).

For the avoidance of doubt, this limitation also extends to the issue of whether Maple Lake cannot be considered a residential treatment center, or that I.P.'s treatments at Maple Lake were not covered services under the Plan, because Maple Lake also offered educational services.

It is without question that, under Utah law, a licensed residential treatment center serving children or adolescents, in addition to providing "residential treatment," which means "a 24-hour group living environment for four or more individuals unrelated to the owner or provider that offers room or board and specialized treatment, behavior modification, rehabilitation, discipline, emotional growth, or habilitation services for persons with emotional, psychological, developmental, or behavioral dysfunctions, impairments, or chemical dependencies," see U.C.A. § 62A-2-101(41), must also provide educational services. Specifically, under Utah law, "[e]ach residential treatment program shall make any necessary accommodation before allowing a child to continue the child's education with a curriculum approved by the State Board of Education." U.A.C. R501-19-3(16). Further, each residential program that provides education "shall utilize a curriculum that is recognized by an educational accreditation organization such as the State Board of Education or the National School Accreditation Board." U.A.C. R501-19-3(17).[12] Moreover, the Utah Code mandates a compulsory education for all

---

[12]   See also U.A.C. R432-101-22(5) (requiring psychiatric residential treatment programs run by hospitals to ensure that "their [school-aged patients'] education is continued through grade 12"); U.A.C. R432-101-22(5)(a)-(c) (requiring, in the same residential treatment programs, that the actual curriculum to be taught must "be approved by the Utah Office of Education" and the educational services "must be accredited by the Utah State Board of Education or Board of Northwest Association of Schools and Colleges," and all teachers "must be certified by the Utah State Board of Education.").

- 16 -

children in Utah, *see* U.C.A. § 53G-6-202, and further provides that any licensed "human services program" in Utah that is serving "education entitled children," must have an "educational service plan that includes evidence . . . that children served by the human services program shall receive appropriate educational services satisfying the requirements of applicable law." *See* U.C.A. § 62A-2-108.1(2)(b). Maple Lake's provision of legally mandated educational programs does not convert otherwise covered residential treatment services into excluded services.[13]

Even without express statutory or regulatory acknowledgment, it would make little sense to deny benefits for residential treatment care solely because some educational services are also available at a residential treatment facility. As a threshold matter, it seems beyond challenge that a residential treatment facility for adolescents would also have to include some educational component. These are young people ages 12-18 years old—middle and high school students—who have sought out help to address their mental health and/or substance abuse afflictions. How could it ever be appropriate for a facility like that to ignore the young person's educational development? And, if so, for how long? Some residents stay for a matter of days, others for months, some for more than a year. Should the

---

[13]     Although United argues in its summary judgment papers that an "Educational Services Exclusion" under the Plan forecloses benefits (*see* ECF No. 61, at 10-11), none of United's reviewers specifically cited this exclusion in their denial letters. Rather, this exclusion was only advanced by an independent external reviewer, who affirmed denial of the claims because he believed that the Maple Lake services provided to I.P. were essentially educational in nature and were therefore excluded from coverage. (*See* A.R. 13702.) By failing to assert this exclusion in its denial letters, United may not now do so on remand.

residential treatment facility simply avoid providing educational services altogether, limit the services it provides, or attempt to mimic a "normal" educational curriculum as best it can? These are interesting questions. These young people—dealing as they are with serious mental health issues—should not be expected to fall further behind in their academic and intellectual development while seeking the medical help they need.

## CONCLUSION

This Court has become well-acquainted with these types of cases over the last few years. Concerned parents and guardians seek mental health care for their struggling school-aged children, who are suffering from serious mental, behavioral, or substance abuse challenges. After trying self-help and outpatient-type resources, they turn to residential treatment centers, hoping that the 24-hour supervision and care available through these programs will help their children. Residential treatment may result in successful outcomes for these children.[14] Indeed, many medical benefit plans offer coverage for residential treatment centers, presumably based on an evidence-based theory that they can provide some measurable aid to these struggling children.

But these programs are expensive. And few families would be able to afford them without the assistance of medical insurance. As this case demonstrates, the

---

[14] Residential treatment is certainly not a panacea for adolescent mental health issues. In fact, there have been troubling allegations and findings concerning safety, neglect, mistreatment, abuse, and even death, at some residential treatment facilities. *See* Desperation Without Dignity: Conditions of Children Placed in For Profit Residential Facilities (National Disability Rights Network, October 2021) (outlining issues of neglect, abuse, and mistreatment at for-profit residential treatment facilities).

availability of medical insurance coverage, even when it appears nominally available for these treatments, is often illusory.

In many ways these cases suggest that the common description of these often-expensive medical insurance contracts as "benefit" plans is, perhaps, an oxymoron. A common understanding of "benefit" (as a noun) is something that "guards, aids, or promotes well-being." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 204 (1971). A more specific understanding applicable in this context is that a "benefit" is something, such as a payment or gift, that provides "financial help in time of sickness, old age or unemployment." *See id.*

Although the law ascribes the moniker of fiduciary to plan administrators, it sometimes appears that their only duty is to preserve the plan's financial assets rather than offering aid to the plan's human assets (its members and beneficiaries), who expected that the plan they funded would provide at least some financial aid to cover their medical needs. The law requires more. Indeed, the Tenth Circuit noted as much almost 20 years ago in *Gaither,* 394 F.3d at 808, when it recognized that even though an ERISA fiduciary "has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them.... [and] must consider the interests of deserving beneficiaries as it would its own."

Perhaps more thoughtful engagement between plan providers, plan administrators, and plan beneficiaries is required. The Tenth Circuit's very recent decision in *D.K. v. United Behavioral Health,* 67 F.4th 1224 (10th Cir. 2023),

explicitly recognizes as much.  In *D.K.* the parent of a young girl, A.K., who was seriously harming herself and in grave risk, repeatedly offered medical records to the plan administrator (which was United) to support 24-hour care at a residential treatment center.  This was the treatment that A.K.'s medical providers agreed would help and protect A.K.  The plan administrator, nevertheless, denied coverage, never once specifically addressing any of the opinions or the evidence offered by D.K.  The Tenth Circuit unequivocally held this was not acceptable, concluding that, even under the most deferential standard, the plan administrator's actions were "arbitrary and capricious."  *Id.* at 1237, 1241.  The court held that ERISA requires benefit plan administrators "to engage with and address" the concerns and arguments advanced by beneficiaries in support of coverage.  Specifically, it stated that:

> United's reviewers were not required to defer to the treating physician opinions provided. However, their duties under ERISA require them to address medical opinions, particularly those which may contradict their findings. This is the core of meaningful dialogue: if benefits are denied and the claimant provides potential counterevidence from medical opinions, the reviewer must respond to the opinions. This back-and-forth is "how civilized people communicate with each other regarding important matters." *Booton*, 110 F.3d at 1463. Interpreting United's legal requirements to be anything less is unreasonable. In refusing to address the treating physician opinions presented to it which could have confirmed A.K.'s need for benefits, United acted arbitrarily and capriciously.

*D.K. v. United Behav. Health*, 67 F.4th at 1241.

True communication requires an exchange.  We talk.  We listen.  We ask questions.  We seek more information.  We deliberate.  We thoughtfully respond.  And often we repeat the process.  This is back-and-forth that the Tenth Circuit has

now rightly recognized is required under ERISA. It is also a recognition of the importance of identifying the issue—i.e., what are the needs of this individual person and what are the means available to help. Identifying the problem can be an ongoing and, sometimes, slow process, but unless you can identify the problem with particularity, a professional answer cannot be forthcoming. As revealed by internal notes in I.P.'s case, the plan administrator's review of denied claims often last no more than a few minutes, despite the voluminous treatment records, often thousands of pages long, that have been submitted and the unique circumstances inherent to each claim. These internal notes reveal there is little deliberation on the part of the reviewer and no real engagement with the medical and treatment records. In short, there is no real effort to identify the scope of the beneficiary's mental health problems. Without identifying the problem there can be no meaningful or proper solution.

Accordingly, based on the foregoing,

IT IS THEREFORE ORDERED that Plaintiff's motion for summary judgment (ECF No. 63) on the denial of coverage for claims concerning I.P.'s treatment at Maple Lake is GRANTED IN PART; and

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (ECF Nos. 58) is DENIED; and

IT IS FURTHER ORDERED that Defendants' and Plaintiff's motions for summary judgment on Plaintiff's Parity Act claims (*see* ECF Nos. 61 & 63) are

DENIED as moot, subject to renewal, if necessary, at a later stage of these proceedings; and

IT IS FURTHER ORDERED that this matter is REMANDED to Defendants for further consideration consistent with this Decision and Order; and

IT IS FURTHER ORDERED that Defendants' motion to strike (ECF No. 95) is DENIED as moot.

DATED this 21ˢᵗ day of June 2023.


BY THE COURT:


Hon. Bruce S. Jenkins
United States District Judge